## Donna v. Abbotts Dairies, Inc.

*Daniel B. Michie, Jr.,* and *Andrew M. Knowlton,* of *Fell & Spalding,* for plaintiffs.

*Arthur Littleton, Claude C. Smith* and *Henry T. Reath,* for defendants.

GRIFFITHS, J., March 4, 1960. — Defendants filed preliminary objections to a complaint in mandamus. We sustained the objections and dismissed the complaint without prejudice to plaintiffs to proceed in accordance with an offer of defendants for inspection as contained in defendants' letter of March 12, 1959.

From our order sustaining the objections and dismissing the complaint this appeal has been taken.

Plaintiffs hold less than two percent of defendant corporation's outstanding stock, being holders of 5,922 shares, out of a total number of 358,974.

One of plaintiffs inspected records of defendant company in 1957 and again in 1958 to ascertain the value of his stock and assist him in the formation of a stockholders' protective committee. In March 1958, he offered his stock to the company at prices not accepted.

Plaintiffs brought mandamus to inspect certain records for the following purposes:

"To determine whether my interest and the interest of others similarly situated in the premises as stockholders requires that certain directors, officers and counsel of the Company be removed from their positions; and to assist in the preparation and completion of bills in equity for mismanagement against, as I believe, officers and directors of the Company and the Company attorney, for such relief as the necessities of the case may require."

The records plaintiffs seek to inspect are the following:

"1. The records of proceedings of directors of the Company for the year 1958.

"2. The records of the acquisition of Nelson Dairies by the Company in 1958.

"3. The Capital Stock Tax Reports (office copies) filed by the Company for 1957 and 1958, and any settlements and resettlements thereon by the Commonwealth of Pennsylvania, together with any such settlements and resettlements on prior year Reports made in 1958.

"4. The records—whatever their form—of all proceedings of the Executive Committee of the board of directors, as composed of three members, in the period June 1953 to April 1956, and as composed of five members, in the period of April 1956 to date.

"5. All records accounting for, underlying or justifying the treatment of the 'Special Insurance Reserve' of $577,754.10 as a part of the whole liability 'Reserve for Contingencies' on the last published (as of Decem-

ber 31, 1957) balance sheet of the Company. (Cf. letter of Company Controller to me dated April 3, 1958 identifying the amount and designation of this reserve, but not giving the records required here).

"6. All records of compensation of individual officers of the Company in the period since February 1, 1953 . . . in form and content sufficient to disclose who fixed such compensation, to whom by name it was paid, and for what periods of time, in what amounts as salary or bonus or otherwise.

"7. All records of transactions since February 1, 1953 in and by which the Company acquired any of its common stock or exercised any option to acquire any thereof; whether from any employee of the Company or otherwise, or assigned or transferred such option, or any interest in the Company's stock deriving therefrom, before or after exercise, to any nominee, individual or individuals, trust or trustees, partnership or corporation . . . in form and content sufficient to disclose the date of each such transaction, the number of shares of stock affected, the names of assignees, nominees and transferees, and the consideration received by the Company for such assignment, transfer or nomination, and the consideration paid to the Company or otherwise by such transferee, assignee or nominee for such shares.

"8. All contracts, designated 'Option Agreement' or otherwise, entered into between the Company and any and all employees of the Company at any time heretofore since February 1, 1953 under which the Company has or purports to have any right title or interest in its common stock or any right to acquire such right, title or interest, by the exercise of an option or otherwise.

"9. All records of purchases of Company stock made since February 1, 1953, by trustees of the Pension Plan of the Company of December 31, 1942 (all such trus-

tees being officers and directors of the Company) . . . in form and content sufficient to disclose date of each purchase, number of shares purchased, and price paid in each instance.

"10. Financial statements of the said Pension Plan of the Company for 1957 and as of December 31, 1957 . . . in the form and content handed to Company directors in 1958.

"11. All contracts entered into since February 1, 1953 between the Company and any employee, director or officer of the Company or creditor or pledgee of any such employee, officer or director in or in connection with the purchase of any stock of the Company, or any voting trust certificate interest for such stock, by any such employee, officer or director on or by deferred or instalment payments.

"(The purpose here is to discover how and to what extent the money and credit of the Company, or its money or credit, have been used for personal purposes in aid or behalf of individual acquisitions of Company stock or voting trust certificates issued by Company directors as voting trustees.)

"12. All correspondence or other communications in writing between the Company and its counsel, partnership or individual, or any officer or director of the Company and such counsel, on the subject of the sale or transfer of any interest in the stock of the Company (voting or non-voting) by officers or directors of the Company, as co-trustees of the will of C. R. Lindback along with such counsel, to any officers or directors of the Company as individuals or as trustees of the Pension Plan of the Company of December 19, 1942 as amended, or on the subject of the creation, preparation, administration or termination of any Voting Trust Agreement, existing or extended, affecting any stock whatever of the Company or naming as voting trustees any officers or directors of the Company.

"13. All contracts of any date involving transfer or sale of stock or interest in stock by the trustees of the will of C. R. Lindback or the will of Mary F. Lindback under or in connection with which the Company has undertaken any obligation whatever, contingent or otherwise.

"14. All records of payments made since February 1, 1953 by the Company to Girard Trust Corn Exchange Bank for any service of that Bank in the issuance or transfer of any voting trust certificates for stock of the Company, or for the preparation or mailing or distribution of any notices, communications or dividend checks or participations to any holder of a voting trust certificate issued by any officer or director of the Company.

"15. All records of compensation paid by the Company to its general counsel, or to any partner of that firm, since February 1, 1953 . . . in form and content sufficient to show dates and amounts of each payment and the purpose thereof, including all fee bills for services not covered by annual retainers.

"16. All records of any and all compensation paid by the Company in the period since June 30, 1957 to ·ndividual directors of the Company for any services rendered (or any services not rendered) otherwise than as officers of the Company (for example merely, as a 'consultant') . . . in form and content sufficient to disclose who fixed such compensation, to whom by name it was paid, for what services or on what other basis, for what periods of time of services or other basis, in what amounts as salary, fee, bonus or otherwise. (Note: We are not interested in record or information as to an established fee paid to directors uniformly for attendance at duly convened meetings of the full board of directors.)"

By letter dated March 12, 1959, defendant corporation offered to plaintiffs inspection of the following:

"1. The Share Register (at the Girard Trust Corn Exchange Bank).

"2. The records of proceedings of the shareholders and Directors.

"3. Capital stock reports and any settlements or resettlements thereon with the Commonwealth of Pennsylvania received by the company.

"4. Books or Records of Accounts, insofar as they show such matters as:

"a. Compensation to officers and counsel

"b. Payment of Taxes

"c. Acquisitions

"d. Purchases or sales by the company of any of its stock

"e. Disbursements by the company in connection with any matters mentioned in your letter."

In the said letter defendant corporation made the following offer to plaintiffs:

"If, after examining these records, you request additional information, we will then consult further with our counsel and consider such additional request."

Plaintiffs have not availed themselves of any of the above offers, but preferred this litigation.

Defendant corporation is a Maryland Corporation registered and doing business in Pennsylvania. The records plaintiffs seek to inspect are physically located in Pennsylvania.

While our courts will not take jurisdiction for the purpose of regulating or interfering with the internal affairs of a foreign corporation, it is equally well settled that the granting of a right to inspect a foreign corporation's books and records, which are within the jurisdiction, does not so offend: Kahn v. American Cone & Pretzel Company, 365 Pa. 161, 163 (1950).

Conditions and extent of inspection are governed by Pennsylvania law since we have a statute which defines the rights of inspection of stockholders of all

corporations doing business in the State: A. L. I. Restatement of Conflict of Laws, §200, Comment a; Section 1010 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-1010, confirmed by section 308A, thereof; Kahn v. American Cone & Pretzel Company, supra, at pages 164 and 165.

Section 308B of the Business Corporation Law, supra, provides:

"Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, for any reasonable purpose, the share register, books or records of account, and records of the proceedings of the shareholders and directors, and make extracts therefrom."

Defendant corporation in its letter of March 12, 1959, offered inspection of the share register, records of proceedings of the shareholders and directors and books or records of account, in five respects, with the offer to consider additional requests, if any, after such inspection.

This is all the inspection the statute affords.

In addition, however, defendant corporation offered for inspection its "Capital Stock tax reports and all settlements or resettlements thereon with the Commonwealth," the third item of plaintiffs' demand.

We believe defendant corporation has more than met the requirements of the statute in their offer and, having done so, should not be compelled to submit to an unwarranted action in mandamus. Defendants' counsel stated at the bar of the court that the offer contained in their letter was still open. Our order dismissing the action was without prejudice to plaintiffs to proceed in accordance with this offer.

Plaintiffs, as above stated, own less than two percent of the outstanding stock. It is a matter of common knowledge that defendant corporation is engaged in a highly competitive business. While we are not imput-

ing improper motives to plaintiffs, we do not believe it is proper, just or equitable for a carte blanche to be given plaintiffs, which is what they are clearly claiming. In doing so they would flout the statute.

We did not pass upon defendants' preliminary objection that plaintiffs' demands are vague, excessive in scope and burdensome, as this becomes moot by our dismissal of the complaint.

Nor did we pass upon defendants' preliminary objection that plaintiffs' request is not made in good faith. Such an objection should be made as a matter of defense on the merits, and cannot be raised by preliminary objections: Hauser v. York Water Co., 278 Pa. 387 (1931) ; Strassburger v. Philadelphia Record Company, 335 Pa. 485 (1939).

For the foregoing reasons we dismissed the complaint, without prejudice as indicated.